IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHENAYA GRANT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, Acting | : | NO.  21-2122 |
| Commissioner of Social Security[1] | : | |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                                            December  7, 2022

Shenaya Grant ("Plaintiff") seeks review of the Commissioner's decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") .  For the reasons that follow, I conclude that the decision of the Administrative Law Judge ("ALJ") is not supported by substantial evidence and remand for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

**I.      PROCEDURAL HISTORY**

Plaintiff protectively filed for DIB and SSI on February 4, 2019, alleging disability beginning on February 1, 2019, as a result of arthritis of the left hip, joint pain, mild disc space narrowing, lung disease, Wegener's granulomatosis, diabetes, and sciatic nerve issues in the back.  Tr. at 225-26, 227-28, 234-38, 281.[2]  Plaintiff's applications were

---

[1]Kilolo Kijakazi is currently the Acting Commissioner of Social Security, see https://www.ssa.gov/agency/commissioner/ (last visited Nov. 23. 2022), and should be substituted for Andrew Saul as the defendant in this action.  Fed. R. Civ. P. 25(d).  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]Plaintiff filed a prior application for DIB in 2012, which was denied initially and Plaintiff did not seek further review.  Tr. at 346.  The ALJ determined that Plaintiff meets the insured status for purposes of DIB through June 2024.  Id. at 30.  Documentation in

denied initially, id. at 146-50, 151-55, and on reconsideration, id. at 161-64, 165-68, after which Plaintiff requested a hearing before an ALJ, id. at 169-71, 173-74, which took place on August 4, 2020. Id. at 50-63. On September 9, 2020, the ALJ found that Plaintiff was not disabled. Id. at 28-41. The Appeals Council denied Plaintiff's request for review on March 9, 2021, id. at 1-3, making the ALJ's September 9, 2020 decision the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1472.

Plaintiff commenced this action in federal court on May 10, 2021, Doc. 1, and the matter is now fully briefed and ripe for review. Docs. 13-15.[3]

## II.   **LEGAL STANDARD**

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months." 42 U.S.C. § 423(d)(1). The Commissioner employs a five-step process, evaluating:

    1.    Whether the claimant is currently engaged in substantial gainful activity;

---

the record indicates that Plaintiff remains insured through December 2023. Id. at 64, 124. I need not resolve the discrepancy in order to adjudicate Plaintiff's appeal.

[3]The parties consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Standing Order, In RE: Direct Assignment of Social Security Appeal Cases to Magistrate Judges (Pilot Program) (E.D. Pa. Sept. 4, 2018); Doc. 18. The case was originally assigned to the Honorable Timothy Rice and Plaintiff consented to proceed before Judge Rice. Doc. 4. Upon Judge Rice's retirement, the case was reassigned to me and Plaintiff again consented. Docs. 16, 18.

      2.      If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities;

      3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;

      4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and

      5.      If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak v. Colvin, 777 F.3d 607, 610 (3d Cir. 2014); see also 20 C.F.R. § 404.1520(a)(4). Plaintiff bears the burden of proof at steps one through four, while the burden shifts to the Commissioner at the fifth step to establish that the claimant is capable of performing other jobs in the local and national economies, in light of her age, education, work experience, and RFC. See Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

    The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999). Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere

scintilla." Zirnsak, 777 F.2d at 610 (quoting Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)); see also Biestek v. Berryhill, __ U.S. __, 139 S. Ct. 1148, 1154 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues.  Schaudeck, 181 F.3d at 431.

### III. DISCUSSION

#### A. ALJ's Findings and Plaintiff's Arguments

The ALJ found that Plaintiff suffers from the severe impairments of rheumatoid arthritis, degenerative disc disease of the cervical spine, obesity and asthma. Tr. at 31.  In addition, the ALJ found that Plaintiff suffers from the non-severe impairments of depression, acute adjustment disorder, and anxiety.  Id.  Reviewing the Listings for disorders of the spine (Listing 1.04), asthma (Listing 3.03), and depression and anxiety (Listings 12.04 and 12.06), the ALJ found that Plaintiff did not have an impairment or combination of impairments that met these Listings.  Id. at 32-33.  The ALJ determined that Plaintiff retained the RFC to perform light work with limitations to lifting 20 pounds occasionally and 10 pounds frequently; standing and walking 2 hours and sitting 6 hours in an 8-hour day; occasionally using stairs/ramps, balancing, stooping, kneeling, and crouching; never crawling or being on ladders, ropes, scaffolds, or unprotected heights; and avoiding pulmonary irritants such as fumes, dust, and poor ventilation environments. Id. at 33.  Based on the testimony of the VE, the ALJ found that Plaintiff could not perform her past relevant work as a housekeeper/cleaner at a hospital and a rental car

driver, id. at 39-40, but could perform the jobs of information clerk, envelope addresser, and order clerk, and was therefore not disabled. Id. at 40-41.

Plaintiff claims that the ALJ erred in (1) failing to fully evaluate all of the medically determinable impairments established in the record and (2) relying on his lay opinion in assessing Plaintiff's manipulative functioning, and also claims that remand is required because (3) the appointment of the Commissioner of Social Security from whom the ALJ and Appeals Council derived their power was in violation of the Separation of Powers clause. Docs. 13 & 15. Defendant responds that the ALJ's decision is supported by substantial evidence, that Plaintiff has not identified any specific Listing criteria that her impairments satisfied nor shown that her impairments were of listing-level severity, has failed to establish manipulative limitations beyond those required for the jobs identified by the VE, and that the Separation of Powers argument does not entitle her to remand. Doc. 14.

B.  **Plaintiff's Claimed Limitations**

Plaintiff was born on December 2, 1983, making her 35 years old at the time of her application, and 36 at the time of the ALJ's decision. Tr. at 53, 227, 234. She completed the twelfth grade and has worked as a housekeeper in healthcare facilities and a driver for a car rental company. Id. at 55, 272.

Plaintiff testified that she worked part-time and turned down the offer of full-time work because she would not be able to perform the job full-time due to getting tired and having to take sick leave. Tr. at 53-54. When asked why she could not work, Plaintiff answered that she "gets sick a lot." Id. at 55. She explained that she has good days and

5

bad days when she cannot get up, which she attributed to her rheumatoid arthritis ("RA"). Id.

### C. Medical Evidence

Rather than summarizing the medical record in its entirety, I will focus primarily on two specific areas relevant to Plaintiff's claims. First, Plaintiff has been diagnosed with RA involving her shoulder confirmed by a positive rheumatoid factor.[4] Tr. at 556. Plaintiff's primary care physician, Stephen R. Permut, M.D., completed a Medical Source Statement on July 29, 2019, indicating that Plaintiff should never lift or carry any amount of weight, use her upper or lower extremities to push or pull, or perform postural activities or perform manipulative activities. Id. at 1206-07. During a June 27, 2019 consultative examination, Dr. Dzurinko noted that Plaintiff had diminished range of motion and tenderness of the left shoulder, id. at 799, and noted significantly reduced range of motion of both shoulders in the Range of Motion Chart. Id. at 807 (90º and 80º for right and left arms versus normal of 150º, as to both forward elevation and abduction). The doctor found that Plaintiff could frequently lift and carry up to 10 pounds and occasionally from 11 -to- 20 pounds. Id. at 800. Dr. Dzurinko also determined that Plaintiff should never reach overhead with either hand, and could only occasionally

---

[4]Plaintiff's RA, similar to her granulomatosis, is a long-standing diagnosis. See, e.g., tr. at 424 (noting diagnoses of granulomatosis and RA in 2012), 556 (noting diagnosis of RA of the shoulder with positive rheumatoid factor), 1009 (noting diagnosis of RA of the right knee). Plaintiff reported to medical consultant David Dzurnko, M.D., that she was diagnosed with rheumatoid arthritis of the knee and hip in 2015. Id. at 796.

6

handle or push/pull with either hand and only occasionally reach (other than overhead) with her left hand.  Id. at 803.

The second impairment relevant to Plaintiff's claims is her diagnosis of Wegener's granulomatosis[5] in 2012, causing epistaxis and hemoptysis,[6] which was confirmed by lung biopsy, and for which she was treated by Temple Rheumatology Associates.  Tr. at 424-25, 795, 1632.  Anand Patel, M.D., at Temple Rheumatology reported that Plaintiff was originally treated with Rituxan,[7] but suffered an infusion reaction of shortness of breath and a seizure, and treatment with MTX (methotrexate)[8] failed due to gastrointestinal side effects.  Id. at 424.  In March of 2017, Plaintiff's GPA was "stable" with a chest CT scan showing multiple "stable" nodules.  Id. at 428.  She continued to

---

[5]Granulamatosis with polyangiitis ("GPA" formerly called Wegener's granulomatosis) is "an uncommon disorder that causes inflammation of the blood vessels in your nose, sinuses, throat, lungs and kidneys. . . . [T]his condition is one of a group of blood vessel disorders called vasculitis.  It slows blood flow to some of your organs.  The affected tissues can develop areas of inflammation called granulomas, which can affect how these organs work."  See https://www.mayoclinic.org/diseases-conditions/granulomatosis-with-polyangiitis/symptoms-causes/syc-20351088#:~:text=Granulomatosis%20with%20polyangiitis%20is%20an,to%20some%20of%20your%20organs. (last visited Nov. 3, 2022).

[6]Epistaxis is a nosebleed.  Dorland's Illustrated Medical Dictionary, 32nd ed. (2012), at 635.  Hemoptysis is the expectoration of blood.  Id. at 842.

[7]Rituxan (generic rituximab) is an intravenous infusion cancer medicine which interferes with the growth and spread of cancer cells, and is also used to treat RA and GPA.  See https://www.drugs.com/rituxan.html (last visited Nov. 23, 2022).

[8]Methotrexate interferes with the growth of certain cells of the body, including cancer cells, and is used to treat severe psoriasis and RA in adults.  See https://www.drugs.com/methotrexate.html (last visited Nov. 23, 2022).

have symptoms of chronic sinusitis and was prescribed Bactrim[9] and her dosage of Imuran[10] was increased.  Id.

In May 2019, a CT scan "showed new bilateral pulmonary nodules suggesting exacerbation of GPA."  See tr. at 1777.  Plaintiff received an infusion of rituximab on December 30, 2019, for treatment of her GPA.  Id. at 1061.  She was admitted to Temple University Hospital on January 8, 2020, eight days after the infusion with complaints of chills, fevers, myalgias, and right pleuritic chest pain.  Id. at 1131.  The differential diagnoses included serum sickness[11] and Systemic Inflammatory Response Syndrome ("SIRS").[12]  Id. at 1132.  She was treated with acetaminophen and released the following day.  Id. at 1132-33.[13]  A chest CT scan in February 2020 showed the lung nodules were significantly improved and no new lesions.  Id. at 1823.

---

[9]Bactrim contains a combination of antibiotics.  See https://www.drugs.com/bactrim.html (last visited Nov. 23, 2022).

[10]Imuran is an anti-rejection drug also used to treat RA.  See https://www.drugs.com/mtm/imuran.html (last visited Nov. 23, 2022).

[11]"Serum sickness is an immune-complex-mediated hypersensitivity reaction that classically presents with fever, rash, polyarthritis or polyarthralgias." https://www.ncbi.nlm.nih.gov/books/NBK538312/ (last visited Nov. 23, 2022).

[12]SIRS is "[a] serious condition in which there is inflammation throughout the whole body.  It may be caused by a severe bacterial infection (sepsis), trauma, or pancreatitis.  It is marked by fast heart rate, low blood pressure, low or high body temperature, and low or high white blood cell count.  The condition may lead to multiple organ failure and shock." https://www.cancer.gov/publications/dictionaries/cancer-terms/def/sirs (last visited Nov. 23, 2022).

[13]The record contains notes indicating that Plaintiff was admitted to Temple University Hospital from January 10-31, 2020.  Tr. at 1212-22.  However, it appears more likely that these records relate to outpatient treatment.  Id. at 1212.

On August 13, 2020, Plaintiff had a CT scan of her lungs showing "multiple bilateral pulmonary nodules," including one "significantly increased in size" in the right lower lobe, two "marginally increased in size" in the right middle and left lower lobes, and two unchanged in the right and left upper lobes, as compared with the CT scan performed in February 2020.  Tr. at 1797-98.  Plaintiff's treating pulmonologist, Nathaniel Marchetti, M.D., noted that Plaintiff's "PFT's [pulmonary function tests] show progression as does her CT."  Id. at 1792 (8/13/20).  Dr. Marchetti noted that Plaintiff had last been treated with rituximab in December 2019, after which she suffered serum sickness "for which she was hospitalized and treated supportively."  Id. at 1805.  The doctor restarted Plaintiff on Imuran and planned to start Nucala,[14] with a repeat CT in 3-6 months.  Id. at 1805.

**D.    Plaintiff's Claims**

1.    Severity/Listing Analysis

Plaintiff complains that the ALJ erred in failing to find her GPA ssevere and failing to acknowledge the side effects of the treatment in considering the condition. Doc. 13 at 3-4, 6-9.  Defendant responds that the ALJ's failure to find Plaintiff's GPA severe is harmless because the ALJ is required to consider the effects of all of Plaintiff's

---

[14]Nucala is a monoclonal antibody that works by reducing levels of eosinophils (a type of white blood cell) used to control severe asthma and to help control symptoms and reduce flares of a rare autoimmune disorder called eosinophilic granulomatosis with polyangiitis.  See https://www.drugs.com/nucala.html (last visited Nov. 23, 2022).

impairments, severe and non-severe, in the later steps of the sequential evaluation. Doc. 14 at 5-6. I do not find Defendant's argument persuasive for two reasons.

First, the ALJ mischaracterized or overlooked test results and treatment notes indicating the worsening of the condition. Although the ALJ noted that a CT scan from October 31, 2017, revealed multiple pulmonary nodules, which were stable in size, and a CT scan from February 2020, which showed bilateral lung nodules which were significantly improved from the prior study, tr. at 34 (citing id. at 415, 1836), the ALJ failed to discuss an intervening exacerbation evidenced on a May 2019 CT scan. See id. at 1777. The ALJ also failed to discuss the worsening of the condition and complaints of shortness of breath between February and August 2020, which were noted by Plaintiff's treating pulmonologist and confirmed by CT scan and PFTs. See id. at 1792 (Dr. Marchetti office note 8/13/20 – PFTs and CT show progression), 1796-97 (CT scan of 8/11/20).

The Third Circuit requires that the ALJ provide sufficient explanation of his findings to permit meaningful review. Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000); see also Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) ("the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review"). Because the ALJ failed to acknowledge the exacerbations of Plaintiff's GPA, it is unclear if he found that the exacerbations did not render the impairment severe or if he overlooked this evidence entirely. Thus, the ALJ"s decision is not amenable to meaningful review and on remand,

such evidence should be considered in the severity analysis and also the later steps of the sequential evaluation regardless of the severity of the impairment.

Second, whether a claimant can tolerate a medication is relevant to the limiting effects of a condition. See, e.g., Peterson v. Colvin, Civ. No. 14-1293, 2015 WL 4207217, at *1 (M.D. Pa. July 10, 2015) (ALJ's failure to consider evidence regarding effect of ongoing chemotherapy on the plaintiff's abilities to maintain employment required remand); see also 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (requiring ALJ to consider the type, dosage, effectiveness, and side effects of any medications you take or have taken to alleviate symptoms in evaluating symptoms). Here, it is not clear that the ALJ appreciated the reaction that Plaintiff had to the rituximab, noting that after a treatment in December 2019, she "experienced face flushing and throat itching and that she felt she could not breathe through her nose." Tr. at 35 (citing id. at 1632). The rheumatology notes indicate that when Plaintiff was first treated with rituximab, she suffered shortness of breath and a seizure. Id. at 419. The treatment notes from Temple Orthopedics indicate that she has an allergy to rituximab. Id. at 735. When she again was treated with this medication in December 2019, she was admitted to the hospital several days later with complaints of fever, chills, muscle and joint pain, a fever, racing heartbeat, headache, shortness of breath, hives, itching, weakness, diarrhea and vomiting. Id. at 1126. She was diagnosed with serum sickness and treated for SIRS. Id. at 1132-33, 1792.

As previously noted the court must determine if the Commissioner's decision is supported by substantial evidence. Schaudeck, 181 F.3d at 431; Poulos, 474 F.3d at 91.

"This standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence." Bailey v. Comm'r of Soc. Sec., 354 F. App'x 613, 616 (3d Cir. 2009) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  Here, the ALJ failed to mention an exacerbation of Plaintiff's GPA in May 2019, a further exacerbation evidenced by PFTs and CT scan in August of 2020, and a serious reaction to one of the medications for her condition.  Thus, I will remand the case for further consideration of Plaintiff's GPA and consideration of the relevant Listings if appropriate. On remand, Defendant shall also fully consider Plaintiff's adverse reaction to rituximab in evaluating the severity and effects of her GPA.

Plaintiff also contends that the ALJ's determination that she did not meet or equal any Listing was deficient.  Doc. 13 at 4-5.  In his decision, the ALJ considered Listings relevant to Plaintiff's degenerative disc disease (Listing 1.04), asthma (Listing 3.03), and mental health impairments (Listings 12.04 and 12.06).  Plaintiff complains that despite finding Plaintiff's RA severe, the ALJ failed to consider any Listing related to RA, specifically noting that Listings 14.06 and 14.09 would be appropriate.  Doc. 13 at 5. Having already determined that remand is appropriate, I suggest that Defendant consider the appropriate Listings and consider the combination of symptoms caused by all of Plaintiff's impairments in doing so.

      2.     <u>Manipulative Limitations</u>

Plaintiff also complains that the ALJ erred in relying on his own lay opinion in assessing Plaintiff's manipulative limitations.  Doc. 13 at 10-13.  Specifically, consultative examiner Dr. Dzurinko found that Plaintiff had manipulative limitations,

12

noting that Plaintiff could occasionally handle and push and pull with her hands and had an additional limitation that she could reach only occasionally and never overhead.  Tr. at 803.  The ALJ found that "there is nothing in [Plaintiff's] outpatient medical records, that support his opinion with respect to manipulative limitations; [Plaintiff] does have some reduced range of motion in her shoulders but normal strength in her upper extremities and normal grip strength."  Id. at 38.  The ALJ acknowledged that Dr. Dzurinko noted reduced strength (4/5) in the upper extremities, id. at 37 (citing id. at 799), but appears to have ignored that finding when noting Plaintiff's normal grip strength.  Having found that the ALJ did not properly consider Plaintiff's GPA and RA, Defendant should reconsider the evidence regarding manipulative limitations.

### 3. Commissioner's Appointment

Finally, Plaintiff claims that the government deprived her of a valid administrative adjudicatory process based on the Supreme Court's decision in Seila Law LLC v. CFPB, 140 S.Ct. 2183 (2020).  Doc. 13 at 13-16.  Although Defendant agrees that the appointment of the Commissioner at the time of the ALJ's decision violated the separation of powers, Defendant contends that this does not entitle Plaintiff to a rehearing of her claim.  Doc. 14 at 11-13.  Because I have determined that remand is necessary based on Plaintiff's substantive claims, I need not address this issue.

## IV. CONCLUSION

The ALJ failed to acknowledge or address exacerbations of Plaintiff's GPA.  Therefore, the case will be remanded for further consideration.  On remand, Defendant shall also consider all of the relevant Listings, including those applicable to RA and GPA.

Finally, on remand, Defendant shall also reconsider the evidence regarding manipulative limitations and obtain additional vocational testimony if necessary.

An appropriate Order follows.